EARL YERKES, Appellee, v. OLIVE EDMONDS et al., Appellants.

**CONTRACTS:** Construction—Contradictory Provisions. A contract
which provides (1) that, in consideration of a mortgagor's reconvey-
ing the property to the mortgagee (a former owner), the latter will
pay the former a specified sum out of a contemplated future sale,
and (2) that said sum "will not be paid under any circumstances
until the farm shall have been sold," and (3) that "this contract is
to continue for two years, and the sale provided for and full settle-
ment hereunder shall be made in that time," obligates the promisor
to pay the specified sum at the end of two years, even though the
land be not then sold.

Headnote 1: 13 C. J. p. 565.

*Appeal from Benton District Court.*—JAMES W. WILLETT, Judge.

JUNE 21, 1926.

Suit to recover $3,700 on a contract between testator and
plaintiff. The defense is that the money was not to be paid un-
less the land described in the contract was sold, and that the
obligation to pay expired at the end of two years if the land was
not then sold. Decree for plaintiff. Defendants appeal.—
*Affirmed.*

*Hugh Mossman* and *M. W. Hyland,* for appellants.

*Nichols, Nichols & St. Clair,* for appellee.

MORLING, J.—Testator (plaintiff's father) had a mortgage
on plaintiff's land, which land had been conveyed to plaintiff by
testator. Plaintiff reconveyed the land to testator, pursuant to
the contract in controversy. This contract, after reciting the
conveyance by the decedent to plaintiff, and describing the land,
proceeded as follows:

· "Whereas, conditions have arisen· since the giving of said
deed, which makes it mutually advantageous to the parties here-
to to have said described property re-deeded to first party. It
is therefore, hereby mutually agreed that second party, wife
joining, will this day convey said property to first party, by

good and sufficient warranty deed, and first party will release the mortgage now existing on said premises, and will return to second party the notes which he now holds against said second party, which notes were given together with first mortgage on said premises, and which notes now amount to $18,800.00. It is further understood and agreed as a part of the consideration of this contract that each of the parties hereto will undertake to find a buyer for said premises. The price asked therefor will be $200.00 per acre, or a lesser sum should the parties mutually agree thereon, but in no event will a sum in excess of $200.00 per acre be asked for said premises, and it is agreed that first party, wife joining, will convey said premises to such purchaser, should one be found and it is agreed that whenever such a purchaser shall be found that first party will pay to second party out of the first money received for said premises, the sum of $3700.00 without interest, and it is hereby mutually agreed that said sum of $3700.00 shall be and hereby is a lien on said premises to the extent of said sum of $3700.00 but the same will not be paid under any circumstances, until the farm shall have been sold.

"This contract is intended to bind the heirs, administrators, representatives and assigns of first party, and they, or any of them will be obligated to pay said sum of $3700.00 to said second party whenever the premises herein described shall have been sold.

"It is understood and agreed that all interest owing by second party to first party to this date shall be canceled and held for naught. It is understood that this contract is to continue for two years and the sale provided for and full settlement hereunder shall be made in that time."

As first prepared (and before signature), the contract omitted the last sentence. At the time the contract was made, plaintiff was arranging to pledge it to his banker, as collateral security. Before signing it, plaintiff took the proposed contract to the banker for examination. The banker told plaintiff that the time of settlement should be fixed in the contract, and that he could not accept it as collateral as it was. Plaintiff then took it back to his father and the attorney who was preparing it, and stated his objections to it. The evidence is conflicting as to what was said, but, as a result, there was added the last sentence:

"It is understood that this contract is to continue for two

years and the sale provided for and full settlement hereunder shall be made in that time.''

The contract was then signed, and was left by plaintiff with his banker, as security.

A brother of the testator's testified, without objection:

''My brother said, 'Have been studying about making Earl a bargain, to take the place back; going to give him what he has in it.' I said it was a good idea; it would take quite a while before Earl would get the place paid for; probably he could use the money he had in that place to better advantage. Afterward, he told me he had done it. He said: 'I have agreed to pay Earl all he has got in the place, and he is to deed it back.' I asked him if he did sign up to that effect, that Earl should have his pay out of the place, and he said he would. Talked with him frequently, and he said, if they sell the place, good enough; and if they couldn't, he would have to arrange to pay Earl at the end of two years.''

One of the defendants testified that the plaintiff told decedent ''he would have to get the money,—that he had to have it; and father said that, if the farm was sold within that time, he would, and if it was not, he would not until it was.'' Also, that the brother said to decedent that decedent ''had to pay the money, and he [decedent] said he would if the farm was sold in two years.''

We are of the opinion that the contract, in the light of the circumstances, must be interpreted as one to pay the $3,700 at the end of the two years although the land should not be then sold. The lower court gave judgment accordingly, and the judgment is—*Affirmed.*

EVANS, STEVENS, VERMILION, and ALBERT, JJ., concur.